2013 UT App 233

# THE UTAH COURT OF APPEALS

TERRY LEE STONE,
Plaintiff and Appellant,
*v.*
M&M WELDING AND CONSTRUCTION, INC.,
Defendant and Appellee.

Memorandum Decision
No. 20120359-CA
Filed September 26, 2013

Eighth District, Vernal Department
The Honorable Edwin T. Peterson
No. 110800080

Loren M. Lambert, Attorney for Appellant
Clark B. Allred and A. Erin Bradley, Attorneys for
Appellee

JUDGE J. FREDERIC VOROS JR. authored this Memorandum
Decision, in which JUDGES CAROLYN B. MCHUGH and
STEPHEN L. ROTH concurred.

VOROS, Judge:

¶1   This appeal involves a "pretaliatory" discharge—an
employee alleges that his employer discharged him not because he
had filed a workers' compensation claim but because he was about
to. The district court granted summary judgment in favor of the
employer. We reverse and remand for further proceedings.

¶2   The employee, Terry Lee Stone, challenges the district
court's grant of summary judgment in favor of the employer, M&M
Welding and Construction, Inc., on the issue of wrongful
termination. "An appellate court reviews a trial court's legal
conclusions and ultimate grant or denial of summary judgment for

correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[1] Accordingly, we recount the facts in the light most favorable to Stone.[2]

¶3     Stone was injured during or after a party hosted by M&M in November 2009. Within four days of the injury, Stone informed M&M's president that he wanted to file a workers' compensation claim; M&M's president dissuaded him from doing so. M&M held Stone's position for him until he was able to return to work two months later. However, Stone's hours of employment were subsequently reduced. Stone consequently informed M&M's president (or the president's secretary) on March 23, 2010, and April 15, 2010, that he intended to file a workers' compensation claim based on his 2009 injury.[3]

¶4     On May 1, 2010, Stone was performing work on a job site belonging to one of M&M's customers when he reported to the customer a spill of contaminated water. The customer felt that Stone's report was exaggerated and demanded that M&M fire Stone. On May 5, 2010, Stone contacted M&M to obtain insurance information for his workers' compensation claim. The next day, May 6, 2010, M&M terminated him.

¶5     Stone sued M&M. He alleged that his termination was in retaliation for his announced intent to seek workers' compensation

---

[1]*Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted).

[2]*Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 5, 215 P.3d 143.

[3]The Workers' Compensation Act provides employees with the right to recover compensation for injuries arising out of their employment. *See generally* Utah Code Ann. § 34A-2-105 (LexisNexis 2011).

benefits. M&M moved for summary judgment, arguing that because Stone had been terminated in May 2010 and did not file a workers' compensation claim until February 2011, his termination could not have been in retaliation for filing the claim. The district court agreed and granted M&M's motion, ruling that "[Stone] could not have been fired in retaliation for filing a workers['] compensation claim since he was fired 8 months before he filed the claim." Stone appeals that judgment.

¶6     Stone contends that the district court's ruling "places undue importance on the date Stone's workers' compensation claim was filed." He argues that "[i]t is irrelevant that he had not yet filed for workers' compensation." M&M responds that Stone must show a causal connection between his discharge and his filing of a workers' compensation claim. Accordingly, the question before us is whether an employee must actually have filed a workers' compensation claim to be protected from retaliatory termination.

¶7     The parties agree that the issue is controlled by the Utah Supreme Court's decision in *Touchard v. La-Z-Boy Inc.*[4] There, the court addressed the following question on certification from the United States District Court for the District of Utah: "Whether the termination of an employee in retaliation for the exercise of rights under the Utah Workers' Compensation Act . . . implicates a clear and substantial public policy of the State of Utah that would provide a basis for a claim of wrongful termination in violation of public policy."[5]

¶8     The supreme court held that "retaliatory discharge for filing a workers' compensation claim violates the public policy of this state; thus, an employee who has been fired or constructively

---

[4] 2006 UT 71, 148 P.3d 945.

[5] *Id.* ¶ 1 (internal quotation marks omitted); *see generally* Utah Code Ann. §§ 34A-2-101 to -1005 (LexisNexis 2011).

discharged in retaliation for claiming workers' compensation benefits has a wrongful discharge cause of action."[6] The court concluded that "workers' compensation represents a clear and substantial public policy" and thus "an employee who has been terminated for exercising his or her workers' compensation rights has a wrongful discharge cause of action under the public policy exception to the at-will rule."[7] However, the court declined to extend this cause of action "to an employee who has been retaliated against for opposing an employer's treatment of employees who are entitled to claim workers' compensation benefits."[8]

¶9 In the foregoing excerpts the supreme court sometimes refers to filing and sometimes speaks more broadly of exercising workers' compensation rights. But elsewhere in its opinion the court stated with precision the elements of a cause of action for wrongful discharge: "To make out a prima facie case of wrongful discharge, an employee must show (i) that his employer terminated him; (ii) that a clear and substantial public policy existed; (iii) that the employee's conduct brought the policy into play; and (iv) that the discharge and the conduct bringing the policy into play are causally connected."[9]

¶10 The test is broadly worded. While the filing of a workers' compensation claim is obviously relevant, we conclude that the public policy embodied in the Workers' Compensation Act may be "brought into play" by conduct short of actually filing a workers' compensation claim. Such conduct could include preparing a claim, notifying the employer of the intent to file a claim, or discussing the claim with coworkers—although, as *Touchard* holds, opposing an

---

[6]*Touchard*, 2006 UT 71, ¶ 1.

[7]*Id.* ¶¶ 17, 25.

[8]*Id.* ¶ 1.

[9]*Id.* ¶ 28 (citation and internal quotation marks omitted).

employer's treatment of other employees who are entitled to claim workers' compensation benefits is insufficient.[10]

¶11 A rule protecting employees only after filing would create a perverse incentive for an employer to discharge an injured employee as soon as the employer learns of the employee's intention to file a claim. Such a rule would be inimical to the "policy of overarching importance to the public" embodied by the Workers' Compensation Act.[11]

¶12 We reverse and remand for further proceedings.[12]

――――――――――

[10]*See id.* ¶ 1.

[11]*See id.* ¶ 14 (citation and internal quotation marks omitted).

[12]Stone claims that the existence of genuine issues of material fact precluded summary judgment. Because of its ruling on the law, the district court did not reach these questions. Consequently, we decline to address them.